J-S34030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                   :               PENNSYLVANIA
                                   :
                 v.                      :
                                   :
                                   :
RYAN D. BAUMGARDNER          :
                                   :
               Appellant           :    No. 269 WDA 2022

Appeal from the PCRA Order Entered January 24, 2022
In the Court of Common Pleas of Cambria County
Criminal Division at CP-11-CR-0000808-2016

BEFORE: DUBOW, J., MURRAY, J., and PELLEGRINI, J.*

MEMORANDUM BY MURRAY, J.:               **FILED: December 9, 2022**

Ryan D. Baumgardner (Appellant) appeals from the order denying his first petition filed pursuant to the Post Conviction Relief Act (PCRA).[1] We affirm.

The PCRA court summarized the case history as follows:

[Appellant] was one of several individuals investigated by the Pennsylvania Office of the Attorney General (OAG) between June 2015 and March 2016 for suspected involvement in a large heroin trafficking network in the Johnstown and Pittsburgh areas. Through the use of wiretaps and other forms of surveillance, OAG determined that [Appellant] purchased significant amounts of heroin from co-defendant Curtis Harper [(Harper)] for re-sale to other individuals.

[Appellant] was charged with several crimes, including two (2) counts of Manufacture, Delivery, or Possession with Intent to

---

* Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

Manufacture or Deliver, 35 P.S. § 780-113(a)(30), one count of Criminal Conspiracy, 18 Pa.C.S. § 903, one count of Dealing in Unlawful Proceeds, 18 Pa.C.S. § 5111(a)(1), one count of Corrupt Organizations — Employee, 18 Pa.C.S. § 911(b)(3), one count of Conspiracy to Violate [Corrupt Organizations, section 911(b)(1), (2), (3) and (4),] and one count of Criminal Use of a Communication Facility, 18 Pa.C.S. § 7512(a). … A jury trial was held on September 18-22, 2017[,] before [the trial court]. Based on the evidence presented at trial, the jury found the Commonwealth met its burden beyond a reasonable doubt and found [Appellant] guilty of [all charges except dealing in unlawful proceeds, 18 Pa.C.S.A. § 5111(a)(1)]. [Appellant] was sentenced on November 16, 2017, to a combined sentence of incarceration in a state prison for a period of nine to eighteen years.

On May 31, 2019, [Appellant] filed a [PCRA petition] …. Upon review of the petition, [the PCRA] court granted [Appellant's] request to proceed *in forma pauperis* and Attorney Terry Despoy, Esq.[,] filed an amended PCRA with [the court] on April 23, 2021. [The PCRA court] held a hearing on [Appellant's] amended PCRA on September 21, 2021, where [Appellant] was represented by Attorney Joseph Addink, Esq.

PCRA Court Opinion, 1/24/22, at 1-2 (some capitalization omitted).

The PCRA court denied Appellant's petition on January 24, 2022, and Appellant filed this timely appeal. Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for review:

A. [Did] trial counsel's representation of [Krista Mader (Mader) and Appellant] in the same trial create a conflict of interest?

B. Was it reasonable for trial counsel to believe he could represent both [Appellant and Mader] in the same trial?

C. Did trial counsel's failure to explain [Recidivism Risk Reduction Incentive (RRRI)] meet the standard for ineffective assistance of counsel?

D. Was trial counsel's strategy to allow overwhelming and cumulative evidence of criminal activity unreasonable and amount to ineffective assistance of counsel?

E. Was trial counsel's ineffective assistance of counsel in the post-sentence motions and the appeal prejudicial to the Appellant?

F. Did trial counsel's failure to raise insufficiency of the evidence with respect to the possession with intent to deliver count prejudicial to the Appellant?

G. Did trial counsel's failure to raise insufficiency of the evidence with respect to the conspiracy counts prejudicial to the Appellant?

H. Was trial counsel's failure to raise insufficiency of the evidence with respect to the corrupt organizations [-] employee count prejudicial to the Appellant?

I. Did trial counsel's failure to raise the issue of improper denial of the motion to sever constitute ineffective assistance of counsel?

Appellant's Brief at 4-5.

In reviewing Appellant's issues,

we must determine whether the findings of the PCRA court are supported by the record and whether the court's legal conclusions are free from error. The findings of the PCRA court and the evidence of record are viewed in a light most favorable to the prevailing party. The PCRA court's credibility determinations, when supported by the record, are binding; however, this court applies a *de novo* standard of review to the PCRA court's legal conclusions. We must keep in mind that the petitioner has the burden of persuading this Court that the PCRA court erred and that such error requires relief. Finally, this Court may affirm a valid judgment or order for any reason appearing of record.

*Commonwealth v. Montalvo*, 205 A.3d 274, 286 (Pa. 2019) (citations omitted).

In each of his issues, Appellant claims that his trial counsel was ineffective. It is well-settled that counsel is presumed to be effective and "the burden of demonstrating ineffectiveness rests on [the] appellant." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010).

> To be entitled to relief on an ineffectiveness claim, [the petitioner] must prove the underlying claim is of arguable merit, counsel's performance lacked a reasonable basis, and counsel's ineffectiveness caused him prejudice. Prejudice in the context of ineffective assistance of counsel means demonstrating there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. … Failure to establish any prong of the test will defeat an ineffectiveness claim.

*Commonwealth v. Solano*, 129 A.3d 1156, 1162-63 (Pa. 2015) (citations omitted).

Appellant first challenges the PCRA court's finding that there was no conflict of interest with trial counsel representing Appellant and Mader. Appellant's Brief at 12. Appellant argues, "Attorney [Jerome] Kaharick's decision to move forward in his dual representation of both [] Mader and [] Appellant created an actual conflict of interest." *Id.* at 13. Appellant concedes that he agreed to Attorney Kaharick's dual representation, yet asserts "he need only show that there was a possibility of harm for a dual representation to rise to an actual conflict." *Id.* Appellant directs our attention to four "areas where there was a strong possibility of harm" caused by the dual representation:

> (a) It allowed for the jury to hear irrelevant evidence related to transactions solely involving Mader, which "likely created an impression of guilt by association[.]" *See id.* at 14.

(b) If Attorney Kaharick had only represented Appellant, he could have conceded the existence of Harper's criminal enterprise, thereby limiting the evidence to that which implicated only Appellant and not forcing the jury to hear hours of unrelated testimony not involving Appellant. *See id.* at 15-16.

(c) By representing both defendants, Attorney Kaharick was prevented from claiming Appellant purchased the heroin for personal consumption. *See id.* at 16.

(d) Agent Thomas Moore[2] implicated Appellant by testifying Appellant's arrest was the result of Mader's grand jury testimony. This gave the impression that Mader had identified Appellant in the grand jury proceedings. Because Attorney Kaharick represented Mader, he could not cross-examine her about her knowledge of Harper's network. *See id.* at 18-19.

Appellant claims Attorney Kaharick's conflict deprived him of his right to effective representation. *Id.* at 19.

In his related second issue, Appellant challenges the PCRA court's finding that Attorney Kaharick had a reasonable basis for believing he could represent both defendants. *See id.* at 20-21. Appellant states:

The vast majority of the testimony was from Agent [Thomas] Moore[,] who went through 296 pieces of evidence, most of which were recordings of telephone conversations obtained through wiretaps. Only seventeen of these wiretaps related to the Appellant….

*Id.* at 24. Appellant argues that Attorney Kaharick rendered ineffective assistance by not objecting to the relevance of 94.3% of the evidence that did

_____

[2] Agent Moore testified he was employed for nine years with the OAG Bureau of Narcotics Investigation and Drug Control around State College, Pennsylvania. N.T., 9/18/17, at 38.

not pertain to Appellant. *Id.* Appellant analogizes his case to the scenario presented in *Commonwealth v. Belgrave*, 285 A.2d 448 (Pa. 1971). In *Belgrave*, the Pennsylvania Supreme Court found the trial court abused its discretion by consolidating the cases of several defendants who had rioted at a high school football game after fans failed to stand for the national anthem. Appellant's Brief at 25. Appellant emphasizes the Court's rationale that

> the evidence of one defendant could have easily been misinterpreted by a jury to be applied to another defendant, because the complexity of the evidence and the extreme variation in the amount and type of evidence against the various defendants required marshalling the evidence against and for each defendant separately.

*Id.* at 26 (quoting *Belgrave*, 285 A.2d at 450). Appellant claims the jury heard recordings of 911 calls involving 20 people, and more than 30 people were mentioned at trial. *Id.* at 26. According to Appellant, drug transactions from Pittsburgh to Johnstown and the movement of money during those transactions were unrelated to him. *Id.* Appellant claims prejudice resulting from "guilt by association." *Id.*

An attorney owes his client a duty of loyalty, including a duty to avoid conflicts of interest. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). Notwithstanding, an appellant cannot succeed in a claim for a potential conflict of interest without establishing that he suffered prejudice. *Commonwealth v. Collins*, 957 A.2d 237, 251 (Pa. 2008). We have explained:

> Counsel may be held to have been ineffective in representing a defendant if the defendant demonstrates that an actual conflict of interest adversely affected his lawyer's performance. Moreover, … while it is true that prejudice is presumed when counsel is burdened by an **actual** conflict of interest, this is so only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest affected his lawyer's performance. … An actual conflict of interest … is evidenced whenever, during the course of representation, the interests of appellant - and the interests of another client towards whom counsel bears obligations - diverge with respect to a material factual or legal issue or to a course of action.

*Commonwealth v. Toro*, 638 A.2d 991, 996 (Pa. Super. 1994) (emphasis in original omitted, emphasis added). Additionally,

> dual representation alone does not amount to a conflict of interest. … To make the dual representation rise to a true conflict, [a defendant] need not show that actual harm resulted but must at least show the possibility of harm. … [A defendant] will satisfy the requirement of demonstrating possible harm, if he can show, *inter alia*, that he had a defense inconsistent with that advanced by the other client, or that counsel neglected his case in order to give the other client a more spirited defense.

*Id.* (quoting *Commonwealth v. Breaker*, 318 A.2d 354, 356 (Pa. 1974) (plurality).

Upon review, we conclude Appellant waived any conflict during his verbal colloquy before the trial court on July 7, 2017. Appellant advised the court that he agreed with Attorney Kaharick's dual representation, and there were no issues which would cause a conflict. N.T., 7/7/17, at 4-5. Appellant acknowledged that Mader could identify him as one of "a number of people to whom she dealt with[.]" *Id.* at 4. In addition, Appellant executed a written conflict of interest waiver. *Id.* at 3.

The PCRA court addressed this issue, explaining:

> Appellant argues that this conflict of interest resulted in three damaging instances during his trial. First, he claims that Attorney Kaharick's dual representation of himself and [] Mader allowed the Commonwealth to present vastly more evidence, largely focused on [] Mader's role in the heroin trafficking ring, than if [Appellant] ha[d] been represented separately. This, [Appellant] argues, created an impression of guilt by association in the minds of the jury and damaged his defense.
>
> Second, [Appellant] argues that the co-representation limited Attorney Kaharick's ability to argue that [Appellant] had merely been purchasing heroin for personal use, as opposed to selling it to other individuals. [Appellant] claims that Attorney Kaharick, had he only been representing [Appellant], could have pressed Agent Moore regarding [] Mader's admitted habit of consuming two bricks of heroin a day and bolstered [Appellant's] argument that he suffered from a serious addiction problem. However, because Attorney Kaharick was also representing [] Mader, [Appellant] claims that this approach was not sufficiently explored at trial.
>
> Finally, [Appellant] notes Agent Moore's testimony that [Appellant's] arrest resulted from [] Mader's testimony to a grand jury that gave the trial jury the false impression that [] Mader had actually named [Appellant] in that testimony. Attorney Kaharick failed to elicit this information in his cross-examination, [Appellant] claims, because it could have harmed [] Mader's defense strategy.
>
> **None of the issues noted by [Appellant] adequately demonstrate that Attorney Kaharick's representation of [Appellant] was adversely affected by his simultaneous representation of [] Mader**. … [Appellant] has merely offered speculation as to the mindset of the jury and other potential defense strategies Attorney Kaharick could have used at trial. This does not meet the standard outlined by the Supreme Court.
>
> Additionally, the Pennsylvania Rules of Professional Conduct provide that, even in the case of a potential conflict of interest, an attorney may proceed in their representation of multiple co-defendants if:

"(1) the lawyer reasonably believes that [they] will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent."

Pa. R. Prof'l Cond. 1.7 Conflict of Interest: Current Clients (Pennsylvania Court Rules (2021 Edition)). Here, it is clear that, due to the differences in the charges against each co-defendant and [Appellant's] stated trial strategy, Attorney Kaharick was reasonable in his belief that he could effectively represent each of his clients, the representation was not prohibited by law, there were no outstanding claims between the co-defendants, and each co-defendant gave their informed consent to the representation. Thus, [Appellant's] claim for relief on this issue must fail.

PCRA Court Opinion, 1/24/22, at 6-7. We agree with and adopt the PCRA court's rationale. *See id.* We further observe that the record does not support Appellant's claim of jury confusion. The jury demonstrated its ability to distinguish the defendants, the charges, and evidence when it acquitted Appellant of distribution of proceeds. Appellant's first and second issues do not merit relief. *Solano*, 129 A.3d at 163; *Collins*, 957 A.2d at 251.

In his third issue, Appellant claims Attorney Kaharick rendered ineffective assistance by failing to explain RRRI when he communicated the Commonwealth's plea offer. Appellant's Brief at 21. According to Appellant, in June or July 2017, the OAG offered a sentence of 3 - 6 years in exchange for Appellant's guilty plea. *Id.* Appellant argues that Attorney Kaharick failed to explain to him that "he would be RRRI eligible and could be released from prison sooner than the minimum term." *Id.* Appellant claims he rejected the

plea offer because Attorney Kaharick failed to explain that he was eligible for RRRI. *Id.* Appellant admits to confirming his understanding of the plea offer at the December 21, 2021, hearing. *Id.* at 23. Nonetheless, Appellant claims counsel's failure to explain his RRRI eligibility caused him to believe that the minimum sentence offered by the Commonwealth "was longer than it actually was." *Id.* Appellant claims Attorney Kaharick's oversight regarding RRRI eligibility caused him to reject the plea, which he otherwise would have accepted. *Id.*

The right to effective assistance of counsel extends to counsel's role in advising his client about the consequences of entering a guilty plea. *Commonwealth v. Barndt*, 74 A.3d 185, 192-93 (Pa. Super. 2013) (citations and quotation marks omitted). "Defense counsel has a duty to communicate to his [or her] client, not only the terms of a plea bargain offer, but also the relative merits of the offer compared to the defendant's chances at trial." *Commonwealth v. Copeland*, 554 A.2d 54, 60 (Pa. Super. 1988). In the context of plea offers, to be entitled to relief for ineffective assistance of counsel, a petitioner must establish: "(1) an offer for a plea was made; (2) trial counsel failed to inform him of such offer; (3) trial counsel had no reasonable basis for failing to inform him of the plea offer; and (4) he was prejudiced thereby." *Commonwealth v. Chazin*, 873 A.2d 732, 735 (Pa. Super. 2005) (quoting *Copeland*, 554 A.2d at 61). "A claim of ineffectiveness may be denied by a showing that the petitioner's evidence fails to meet any

of these prongs." ***Commonwealth v. Washington***, 927 A.2d 586, 594 (Pa. 2007) (citations omitted).

At the PCRA hearing, **Attorney Kaharick testified that he advised Appellant to take the Commonwealth's plea offer** of 3 - 6 years in prison. Attorney Kaharick testified:

> I specifically told [Appellant] to take the three to six, all right. I said that to him on numerous occasions. He specifically told me there's no way I'm taking three to six. Now, I don't do this to defendants on any level on any criminal defense, I am not going to tell somebody they must do anything. They make their decision. But when [Appellant] said he didn't know anything about the three to six, he turned it down so many times. He didn't want to hear about it. He was not guilty of this. He did not want to hear about this. All I do is use drugs, and I'm not involved in this, but I told him take the three to six. I specifically told him.
>
> . . .
>
> I did not talk about [RRRI]. I don't believe I talked about that at all because it was specifically take this three to six, it's one of the best deals you're going to get, you'll be out of here as soon as possible. **But I might have said something to the effect of you won't do three to six. I said you'll be out sooner than that. I'm pretty sure I said that. No, I'm absolutely sure I said that, okay. But I didn't put it in terms of RRRI.**

N.T., 9/17/17, at 30-31 (emphasis added).

Consistent with the foregoing, the PCRA court concluded that Appellant failed to establish prejudice. The PCRA court explained it

> conducted a colloquy of [Appellant] on July 7, 2017, during which the plea offer by the Commonwealth was placed on the record and explained to [Appellant]. N.T. Hearing, 07/07/17. [Appellant] was informed that offer was time-limited and still declined to accept it. ***Id.*** Several other pre-trial hearings were held in this case and at no point did [Appellant] indicate that he wished to accept that offer. N.T. Hearing 07/31/17; 09/11/17. Additionally,

- 11 -

> [Appellant] stated at his PCRA hearing that **he would not have accepted the plea offer even if he had known that the minimum sentence would have been less than three years.** N.T., 09/21/21, at 19-20[.]

PCRA Court Opinion, 1/24/22, at 9-10 (emphasis added).  The record supports the PCRA court's determination, and we discern no error.  Appellant's third issue merits no relief.

In his fourth issue, Appellant argues:

> The trial court erred and/or abused its discretion in determining that trial counsel's strategy to allow the admission of overwhelmingly cumulative and prejudicial evidence of criminal activity was reasonable.

Appellant's Brief at 23-24.  Appellant claims Attorney Kaharick rendered ineffective assistance by not objecting to overwhelming evidence that had no connection to him.  *Id.* at 24.  Appellant asserts only 17 of the wiretaps related to him.  *Id.*  Appellant contends Attorney Kaharick's failure to object to the remaining evidence was highly prejudicial, repetitive and cumulative.  *Id.* Once again, Appellant compares the circumstances in his case to those in *Commonwealth v. Belgrave*, 285 A.2d 448 (Pa. Super. 1971).  Appellant's Brief at 25.  Appellant asserts that the overwhelming evidence presented at trial was unrelated to him, cumulative, and "it would have been extremely difficult for a jury to 'marshal' the evidence that was only relevant to Appellant." *Id.* at 26.

The PCRA court explained its rejection of this  ineffectiveness as follows:

> [Appellant] is correct in his assertion that a failure to object at trial without a reasonable basis can support a claim of ineffective

assistance of counsel. ***Commonwealth v. Pierce***, 527 A.2d 973 (Pa. 1987). [Appellant] freely admits, however, that Attorney Kaharick did raise an objection to the relevancy of much of the evidence presented at [Appellant's] trial. Memorandum in Support of PCRA, p. 9-10. Further, Attorney Kaharick testified at the PCRA hearing on September 21, 2021, that the admission of additional evidence that did not directly implicate [Appellant] was a key part of the defense strategy. N.T., 9/2/11, at 31-33. By contrasting the small portion of evidence involving [Appellant] with the large body of evidence presented at trial, Attorney Kaharick believed that he could minimize [Appellant's] role in the heroin trafficking ring in the eyes of the jury. ***Id.*** Regardless of the relative effectiveness of this strategy, [the PCRA court] finds that Attorney Kaharick's objection to the admission of this evidence at trial and his stated defense strategy prevents [Appellant] from satisfying the second prong of the [ineffectiveness] test on this issue. Accordingly, [Appellant's] claim for relief on this issue must fail.

PCRA Court Opinion, 1/24/22, at 10-11. We agree with the PCRA court's reasoning and affirm on this basis regarding Appellant's fourth issue. ***See id.***

In his fifth issue, Appellant argues Attorney Kaharick rendered ineffective assistance by failing to preserve his challenges to the sufficiency of evidence in post-sentence motions and on direct appeal. Appellant's Brief at 28-29. Appellant disputes the PCRA court's finding that no prejudice resulted from trial counsel failing to preserve these claims. ***Id.*** at 29. In support, Appellant's sixth, seventh and eighth issues challenge the sufficiency of the evidence underlying Appellant's convictions of possession with intent to deliver; conspiracy to manufacture, deliver or possess with intent to deliver heroin; conspiracy to violate the corrupt organizations act; and the crime of corrupt organizations. Appellant's Brief at 29-30, 31, 39. We address each sufficiency challenge in turn.

- 13 -

In his sixth issue, Appellant argues Attorney Kaharick rendered ineffective assistance by not challenging the sufficiency of the evidence regarding his conviction of possession with intent to deliver heroin. Appellant's Brief at 29-30. Appellant specifically challenges counsel's failure to argue that the evidence did not establish his "intent to deliver." *Id.* at 30. According to Appellant, there were no wiretaps "where [] Appellant was attempting to sell drugs, no testimony by someone who had purchased drugs from [] Appellant, and the police never found drugs in [] Appellant's possession." *Id.* Rather, the Commonwealth relied on wiretaps indicating Appellant purchased heroin in quantities of one or two "bricks" at a time. *Id.* at 31.

In claiming this evidence failed to establish "intent to deliver," Appellant relies on Agent Moore's testimony that a heavy heroin user could use one or two bricks in a day, and Mader's testimony she had "a 2 brick a day habit." *Id.* Finally, Appellant asserts there is no evidence, other than these calls, to establish his intent to deliver. *Id.* Appellant argues counsel's failure to challenge the sufficiency of the evidence caused him prejudice, as a court would have deemed this evidence insufficient to sustain his conviction. *Id.*

When reviewing a sufficiency challenge, we determine "whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable

doubt." ***Commonwealth v. May***, 887 A.2d 750, 753 (Pa. 2005) (citation omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017) (citation omitted). "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." ***Id.***

The relevant elements of PWID are as follows:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

….

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

As this Court has explained:

To sustain a conviction for PWID, the Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance. Moreover, [w]ith regard to the intent to deliver, we must examine the facts and circumstances surrounding the possession. … [F]actors to consider when determining whether a defendant intended to deliver a controlled substance include the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and the sums of cash found in possession of the defendant. The final factor to be considered is expert testimony. Expert opinion testimony is admissible concerning

whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use.

***Commonwealth v. Bernard***, 218 A.3d 935, 943 (Pa. Super. 2019) (citations and internal quotation marks omitted, some formatting changed).

The Commonwealth's evidence was comprised, in part, of wiretapped conversations between Curtis Harper (Harper) and participants of drug transactions. ***See*** N.T., 9/18/21, at 40 (wherein Agent Moore testified regarding the nonconsensual interceptions of three telephones during the investigation). The Commonwealth presented Agent Moore as an expert in in narcotics investigations, and the coded language used by drug dealers. ***Id.*** at 162-72. Agent Moore provided the context of intercepted communications between drug supplier Curtis Harper and various distributors:

> Harper had a couple different sources of heroin during this timeframe. Just prior to the interceptions, the source that he was going to, something happened where he was no longer getting heroin from that person. So[,] during the interceptions, there was two different people he was getting heroin from.
>
> What this means to me is that heroin that he's been purchasing recently, that people are liking them, such as the call when he was talking to Rischelle Weyant, and they talked about the skull and people are flipping from them, … so he went back to the same supplier again.

***Id.*** at 42.

The Commonwealth presented evidence that Appellant purchased one- and 2-brick quantities of heroin from Harper. At trial, wiretapped "call 5775"

- 16 -

was played for the jury. N.T., 9/19/17, at 44. Agent Moore then explained the coded language used by the participants:

> This is Curtis Harper speaking to [Appellant]. Based upon the call, it leads me to the opinion that [Appellant] had a previous drug relationship with Mr. Harper, and he owes him $400.
>
> At some point in time [Appellant] lost Mr. Harper's telephone number and was glad that Mr. Harper called him back. [Appellant] is on his way to building 121, the first section, door on the left, which would be apartment 215, to repay the $400 drug debt that he owes to Mr. Harper.

*Id.* at 45. Agent Moore described a "follow-up" call that took place at 6:42 p.m. that same day: "Harper answers the phone. [Appellant] says he is here … [Appellant] tells him that he is outside the door…." *Id.* According to Agent Moore, Appellant was observed going into and out of Harper's apartment that day. *Id.*

Agent Moore described a February 8, 2016, 4:55 p.m. intercepted call that was played to the jury:

> The speakers in these calls are Curtis Harper and [Appellant]. [Appellant] orders another brick of heroin. Harper asks how much he owes. [Appellant] says he paid him the last time he was there, plus he got another one and paid for it as he was walking out. The last time he was there was on February 1st, and [Appellant] is on his way down to Solomon Homes and he is to call when he gets there.

*Id.* at 84. Agent Moore described a wiretapped call between Harper,[3] Appellant, and others that took place at 5:23 p.m. that same day:

---

[3] At trial, each of the wiretapped calls was played for the jury, after which Agent Moore described the contents of the call, offering his expert opinion.

[Appellant] arrives at building 12 apartment 215, meets with Mr. Gordan Armstrong-Cole. Mr. Harper asked [Appellant] to find out how much was left, so [Appellant] gives the telephone to Jordan Armstrong-Coles. There's a lengthy argument back and forth as far as how much money Mr. Jordan Armstrong-Coles has.

It's determined that totally he has two bricks of heroin, four bundles of heroin and a single bag of heroin. One of those bricks was to go to [Appellant] for $200. Harper then fronts the remainder brick – remaining brick and four bundles of heroin and a single bag to [Appellant] and told him that he owes $400 for that heroin.

[The Commonwealth]: … [D]o you have an opinion that the possession of that much heroin is for use or distribution.

A. [Agent Moore:] For distribution.

Q. What do you base that on?

A. Based upon my experience, the – one of the highest I've ever heard of was approximately a brick-a-day habit.

*Id.* at 84-85.

Agent Moore described another wiretap that same day, about an hour and five minutes later:

[Agent Moore:] My opinion is [Appellant] had received the remainder of Curtis Harper's heroin. Mr. Harper no longer has heroin but still has a customer that wants a brick of heroin, and he is checking to see if [Appellant] can deliver that brick of heroin to that customer.

*Id.* at 88. Agent Moore stated that during the call, the participants referred to Appellant's fiancé, Robin, as having a vehicle. *Id.*

The jury heard each of the wiretapped telephone calls and expert testimony regarding Appellant's purchase of heroin. Based upon the foregoing, the jury could infer Appellant repeatedly possessed quantities of

- 18 -

heroin with the intent to deliver. *Miller*, 172 A.3d at 640 (the jury is free to believe all, part, or none of the evidence). Because a sufficiency challenge would not have been successful, Appellant failed to establish prejudice resulting from Attorney Kaharick's failure to challenge the sufficiency of the evidence underlying his PWID conviction. *See Solano*, 129 A.3d at 1163.

In his seventh issue, Appellant argues Attorney Kaharick rendered ineffective assistance by not challenging the sufficiency of the evidence underlying his convictions of conspiracy to commit PWID and conspiracy to commit corrupt organizations. Appellant's Brief at 31-32. Appellant claims there is no evidence of an agreement to commit the crime of PWID, only evidence regarding the quantity of heroin purchased. *Id.* at 34. Regarding the crime of corrupt organizations, Appellant claims there is no evidence that he knew of or was involved in Harper's drug ring. *Id.* at 35. Appellant argues the only evidence against him is the quantity of heroin he purchased. *Id.* at 37. We disagree.

To convict a defendant of conspiracy, the trier of fact must find: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. 18 Pa.C.S.A. § 903.

> The essence of a criminal conspiracy, which is what distinguishes this crime from accomplice liability, is the agreement made between the co-conspirators.
>
> Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient to establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators. Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.

*Commonwealth v. Dunkins*, 229 A.3d 622, 633 (Pa. Super. 2020) (citation omitted and formatting altered), *aff'd on other grounds*, 263 A.3d 247 (Pa.

We defined the underlying crime of PWID above. Regarding corrupt organizations, Section 911 of the Crimes Code provides, in pertinent part:

> It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

18 Pa.C.S.A. § 911(b)(3). The term "enterprise" is defined as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity, engaged in commerce and includes legitimate as well as illegitimate entities and governmental entities." 18 Pa.C.S.A. § 911(h)(3). "Racketeering activity" is

defined to include any violation of Section 780-113 of The Controlled Substance, Drug, Device and Cosmetic Act. 18 Pa.C.S.A. § 911(h)(1)(ii). A "pattern of racketeering activity" means "a course of conduct requiring two or more acts of racketeering activity[.]" 18 Pa.C.S.A. § 911(h)(4).

The evidence stated above, viewed in a light most favorable to the Commonwealth, established Appellant's conspiracy to commit PWID. As the PCRA court summarized:

> Evidence was presented at trial that [Appellant] was observed entering and exiting the location out of which the heroin trafficking ring operated and recorded discussing the purchase of amounts of heroin typically associated with resale to other individuals. N.T., 9/19/17, at 44-45; N.T., 9/18/17, at 25-26; N.T., 9/19/17, at 128-137. The jury heard testimony that there were no controlled purchases involving [Appellant] and that there was no direct evidence tying [Appellant] to the sale of drugs to other individuals. N.T., 9/20/17, [at] 111-13. The trial court later instructed the jury on circumstantial evidence and the weight it was to be afforded in their decision. The jury ultimately determined that [Appellant's] conduct met all of the elements to be convicted of Criminal Conspiracy, including the commission of a "step in furtherance" of the conspiracy….

PCRA Court Opinion, 1/24/22, at 12-13 (some punctuation changed).

The PCRA court further concluded Appellant's claim of ineffective assistance for failure to challenge the sufficiency of the evidence underlying his conspiracy (corrupt organizations) (Appellant's seventh issue) fails for the same reasons. *Id.* at 13. We agree.

As stated above, the jury heard evidence regarding Appellant's participation in the Harper's drug enterprise through the repeated purchase of heroin in large quantities. *See* N.T., 9/19/17, at 45. 84-88. The jury further

heard evidence of Appellant's repeated PWID (a racketeering activity) and his discussion of delivering heroin to a customer of Harper. *Id.* at 88. Viewed in a light most favorable to the Commonwealth, this evidence is sufficient to sustain Appellant's conviction of entering into an agreement to commit the crime of corrupt organizations, and taking a substantial step in furtherance thereof. As such, Appellant's ineffectiveness claim, premised upon his challenge to the sufficiency of the evidence underlying his corrupt organizations conviction, fails. *See Solano*, 129 A.3d at 1163.

In his eighth issue, Appellant argues Attorney Kaharick rendered ineffective assistance in not challenging the sufficiency of the evidence underlying his corrupt organizations – employee conviction. Appellant's Brief at 39. Appellant argues, "the only evidence offered at trial to support this charge was that Appellant made calls to purchase[] heroin from a dealer." *Id.* According to Appellant, his interactions with Harper show he was "nothing more than an annoying customer." *Id.* Appellant directs our attention to evidence that Appellant had lost Harper's telephone number and had arranged to pay off a $400 debt he owed to Harper. *Id.* Appellant insists his "only knowledge of [] Harper's organization is where he was directed to go make purchases." *Id.* at 42. Appellant points out, "Even told where to go, [] Appellant was not really sure of where it was." *Id.*

The evidence, described above, was sufficient to sustain Appellant's conviction of corrupt organizations. The jury heard evidence regarding

Appellant's participation in Harper's drug enterprise through the purchase of heroin in large quantities. *See* N.T., 9/19/17, at 45. 84-88. Further, the evidence showed Appellant's participation in planning a delivery of heroin to Harper's customer. *Id.* at 88. The testimony, described in detail above and viewed in a light most favorable to the Commonwealth, is sufficient to sustain Appellant's conviction of corrupt organizations. As such, Appellant's ineffectiveness claim, premised upon his sufficiency challenge, fails. *See Solano*, 129 A.3d at 1163.

In his ninth issue, Appellant claims Attorney Kaharick rendered ineffective assistance by not appealing the denial of his motion to sever the trials of Mader and Massai Dickey (Dickey). Appellant's Brief at 46. Appellant contends there is no evidence that he and his codefendants participated "together" in the same acts or transactions. *Id.* Appellant argues (a) each defendant's connection to Harper's drug organization would not have been admissible in separate trials, and (b) the jury was incapable of separating the testimony related to the corrupt organization from the scant evidence pertaining to Appellant. *Id.* at 46-47. According to Appellant, he likely would have been granted a new trial had Attorney Kaharick challenged the denial of his severance motion on direct appeal. *Id.* at 47.

Appellant's claim lacks arguable merit because on appeal, a challenge to the denial of severance would not succeed. The decision whether to sever trials of co-defendants is within the sound discretion of the trial court, and we

will not disturb this decision absent a manifest abuse of discretion. *Commonwealth v. Wharton*, 607 A.2d 710, 717 (Pa. 1992); *see* Pa.R.Crim.P. 582(A)(2) ("Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."), 583 ("The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.").

In cases where co-defendants are charged with conspiracy, severance is disfavored:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability.

*Commonwealth v. Travers*, 768 A.2d 845, 847 (Pa. 2001).

Here, severance was unwarranted because Appellant and his co-defendants were charged with conspiracy; evidence presented at trial was equally admissible against all three codefendants; and the prosecution's case required the testimony of fifteen witnesses. Separate trials for each defendant under these circumstances "would have placed a heavy burden upon the

judicial system as well as the public," *Commonwealth v. Jones*, 668 A.2d 491, 502 (Pa. 1995); needlessly subjected the witnesses to great inconvenience and trauma; and randomly favored whichever of the three defendants was tried last.

Further, Appellant cannot establish prejudice resulting from counsel's failure to appeal the denial of severance. "[A] motion for severance is addressed to the sound discretion of the trial court, and that the decision reached by the trial court will not be disturbed absent a showing of manifest abuse of discretion." *Commonwealth v. Grillo*, 917 A.2d 343, 343 n.1 (Pa. Super. 2007). "The critical factor that must be considered is whether the accused has been prejudiced by the trial court's decision not to sever. The accused bears the burden of establishing such prejudice." *Commonwealth v. Lopez*, 739 A.2d 485, 501 (Pa. 1999).

> With respect to the severance of offenses:
>
> Offenses charged in separate informations may be tried together if they are "based on the same act or transaction" or if "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion." Pa.R.Crim.P. 582(a)(1). The court has discretion to order separate trials if "it appears that any party may be prejudiced" by consolidating the charges. Pa.R.Crim.P. 583.

*Commonwealth v. Thomas*, 879 A.2d 246, 260 (Pa. Super. 2005).

Appellant and his codefendants were charged as participants in a corrupt organization, and as co-conspirators. This Court has recognized, "Joint trials are advisable when the defendants face conspiracy charges and where the

multiple charges demonstrate a logical connection between the defendants and the various crimes charged." ***Commonwealth v. Paolello***, 665 A.2d 439, 451 (Pa. 1995). The evidence of the parameters of the corrupt organization would have been admissible at each trial. At the PCRA hearing, the Attorney Kaharick recognized this:

> Q. [The Commonwealth:] Concerning the possibility of severing the trials of Mader and [Appellant] specifically, with the charges of conspiracy and corrupt organizations, if there was a separate trial for [Appellant], would much of the evidence that was presented at the trial that occurred have to be presented again because of those two charges?
>
> A. [Attorney Kaharick:] Yes. But I specifically recall somewhere along the line, if my memory is right, … in any case that's involving multiple defendants I always ask for a severance of the cases. They always ask for consolidation. I even made somewhat elliptical remarks about it. It was a very difficult case to win in terms of anti-consolidation. Of course[,] you want severance, because you're putting three people in the room at one time, it doesn't look good. So[,] every defense lawyer in the world is going to say I want these cases severed. It's hard to get. The statute is very hard to get.

N.T., 9/21/21, at 31-32.

Finally, the jury acquitted Appellant of distribution of proceeds, showing it was able to separate the evidence pertaining to Appellant. We discern no error in the PCRA court's determination that a motion to sever would have been unsuccessful. Evidence regarding the participation of Mader and Dickey in the same drug distribution organization as Appellant would have been admissible at the trial of each defendant. ***See Paolello***, ***supra.*** Appellant's final claim warrants no relief.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  12/9/2022